### HALLIDAY et al. v. CREWS et al.* (No. 2479.)

(Court of Civil Appeals of Texas. Texarkana. Feb. 2, 1922. Rehearing Denied Feb. 16, 1922.)

**1. Venue ⬅➔7—Inference that defendants contracted in writing to pay another's notes to plaintiff warranted from facts.**

Inference that the indebtedness of F. to plaintiff, which defendants contracted in writing to pay, was F.'s notes, so that action thereon was triable in the county where by their terms they were payable, *held* warranted from the facts that F. owed plaintiff nothing else, and that defendants afterwards made payments thereon.

**2. Appeal and error ⬅➔1046(4)—Trying merits before appeal on venue harmless.**

Any error in requiring trial on the merits before disposition by appeal of question of venue *held* harmless, defendants being ready on the facts, and there being no merit in their plea of privilege.

**3. Logs and logging ⬅➔3(15) — Finding of partnership, and not individual, taking over contract and assuming payment warranted.**

Finding that it was a partnership, and not an individual member thereof, which took over timber rights of F. under contract with plaintiff, and assumed payment of F.'s notes to plaintiff, *held* warranted by the evidence.

**4. Dismissal and nonsuit ⬅➔25—Allowing dismissal as to one defendant held not error as to other defendant.**

Where plaintiff sold standing timber to F., and F. transferred by sale or mortgage his interest therein to H., who assumed payment of the purchase-money notes given by F. to

---

*Writ of error dismissed for want of jurisdiction April 5, 1922.

plaintiff, it was not error, in action against F. and H. to foreclose vendor's lien and for judgment on the notes, to allow dismissal against F., who was bankrupt and not served, it not being matter of which H. could complain that his interest alone being foreclosed would not bring as much at the sale as would the interests of H. and F. if both were fore-closed; H. by his pleading seeking no relief against F.

Appeal from District Court, Smith County; J. R. Warren, Judge.

Action by C. C. Crews against T. W. Halliday and others. From a judgment for plaintiff, the named defendant and another appeal. Affirmed.

This was a suit by appellee Crews against C. C. Ford and against appellee S. E. Halliday and appellants T. W. Halliday and H. L. Halliday as partners doing business under the name "T. W. Halliday Lumber Company." The "statement of the nature and result of the suit" in appellants' brief is as follows:

"C. C. Crews filed this suit in the district court of Smith county, Tex., on November 9, 1920, against C. C. Ford and the T. W. Halliday Lumber Company, alleging that the said lumber company was composed of T. W. Halliday, S. E. Halliday, and H. L. Halliday. Said petition alleging the execution of a certain timber contract between the plaintiff and C. C. Ford of date June 9, 1919, wherein C. C. Crews transferred certain standing timber on about 1,400 acres of the Perkins and A. West headright surveys in Gregg county, Tex., and received therefor $400 cash and 14 notes of $400 each, and alleged that on May 5, 1920, said Halliday Lumber Company agreed in writing to pay the notes executed by Ford, and that the notes have not been paid as contracted by Ford, and plaintiff asks for a fore-closure of his vendor's lien on the timber and for a joint and several judgment against all of the defendants. Plaintiff also prayed for an injunction restraining the further cutting of the timber, which was granted. The defendants T. W. Halliday, S. E. Halliday, and H. L. Halliday filed their plea of privilege on November 15, 1920, alleging that they were residents of Gregg county, Tex., and not of Smith county, said plea containing all the statutory requisites of a plea of privilege, and prayed that the suit be transferred to the district court of Gregg county. On June 22, 1921, the defendants Hallidays also filed exceptions to the venue. On June 28, 1921, the defendants Hallidays filed their original answer, which consisted of a plea of coverture by S. E. Halliday and a special denial of H. L. Halliday to the effect that he was not connected with T. W. Halliday in said matters and things, and that the transactions were not partnership transactions, and that T. W. Halliday was in no way authorized to bind him. Jointly the defendants pleaded a general demurrer, general denial, and specially answered that the letter sued upon was never completed, and that the plaintiff never accepted the conditions of same, and that the consideration failed in whole or in part, that the contract between Ford and T. W. Halliday was not a sale, but was only a mortgage, and that the letter sued upon of May 5, 1920, had no reference to the C. C. Ford notes and was without consideration. On June 28, 1921, the case was called for trial, and the defendants Hallidays presented and urged their plea of privilege, which the court overruled, to which action the defendants excepted, and gave notice of appeal. Over protest of the defendants the cause was heard upon its merits, and judgment was rendered against T. W. Halliday and H. L. Halliday, and plaintiff was decreed his foreclosure. Judgment was rendered in favor of S. E. Halliday for her costs, and the defendant C. C. Ford, not having been served with citation, was dismissed. The defendants Hallidays excepted to the judgment, and gave notice of appeal."

Appellee Crews concedes in his brief that the foregoing statement is correct as far as it goes, and sufficient with the following "additional statement," to wit:

"Crews alleged in his petition that the notes were, by their terms, payable in Tyler, Tex. He also controverted, under oath, the appellants' plea of privilege, alleging that the notes sued on were payable in Tyler, Smith county, Tex., that appellants purchased from C. C. Ford the timber for which the notes were given, and had same transferred and assigned to them in consideration of the assumption of the payment of said notes, and in addition thereto that appellants agreed in writing to pay same. Appellant H. L. Halliday filed plea, under oath, denying partnership.".

The trial was to the court without a jury, and he made findings of fact substantially as follows:

(1) That Crews resided in Smith county, and Ford and the Hallidays in Gregg county, at all times during the transactions involved in the suit, and continuously to the trial thereof. (2) That about March 1, 1920, the Hallidays formed a partnership, and for about nine months thereafter transacted business under the firm name, to wit, T. W. Halliday Lumber Company, that the principal office of the firm was in Longview, in Gregg county, and that T. W. Halliday was the active manager for and conducted the business of the firm. (3) That on June 9, 1919, Crews and Ford entered into a contract by which the former sold certain timber on land in Gregg county to the latter for $8,000, to be paid $400 in cash and the remainder in accordance with the terms of certain notes made by Ford, 19 in number, for $400 each and 8 per cent. interest from its maturity, one of them payable August 1, 1919, and one of the others on the 1st day of each month thereafter until all were paid, and all to mature at the option of the holder if default should be made in the payment of any one of them. It was stipulated that Ford might transfer his rights and title to the timber under the contract to any one acceptable to Crews. It was further stipulated that Ford

should sell lumber he manufactured from pine timber covered by the contract to one B. F. Phillips and lumber he manufactured from other timber to appellant T. W. Halliday, and that Phillips and T. W. Halliday should be liable to Crews for $4 per thousand feet of the lumber Ford delivered to them, respectively. Phillips and T. W. Halliday both signed the contract as evidence of their agreement to make such payments. It was further stipulated that Ford should manufacture as much as 100,000 feet of lumber a month from the timber. By the terms of the contract Crews retained a lien on the timber to secure its performance. (4) That the notes executed by Ford in conformity to the contract were by their terms payable in Tyler, Tex. (5) That on April 27, 1920, Ford, being indebted to T. W. Halliday, to secure him and other creditors, including Crews, agreed with T. W. Halliday that he (T. W. Halliday) should take over Ford's mill property, and manage and control same until said indebtedness was paid. That on said day Ford executed and delivered to T. W. Halliday an instrument by which for a recited consideration of $5,000 he "sold and delivered" his mill property to T. W. Halliday. The instrument contained a recital that Ford agreed "for the said T. W. Halliday to assume and carry out the contract" made by him with Crews, whereby he "was to cut and remove the timber from approximately 1,400 acres of land" belonging to Crews. (6) That after the execution of the instrument Ford continued to operate the mill for a few days, and then T. W. Halliday told Ford that he had no further use for his services, took personal charge of the mill and all property used in connection therewith, for and on behalf of the T. W. Halliday Lumber Company, and began operating same, cutting and using the timber sold by Crews to Ford, and thereafter said company handled the proceeds of said mill. (7) That on May 5, 1920, the T. W. Halliday Lumber Company notified Crews that it had taken charge of the Ford mill, and that he could look to it for the payment of the timber as per the original contract. The notice was by a letter to Crews signed "T. W. Halliday Lumber Company, T. W. Halliday," as follows:

"I have taken charge of the Ford mill, and want to push the operations and cut the timber, and will be ready to run in about 30 days, and want you to allow me until July 1 before we make another payment, and from that date until we clear Mr. Ford you can look to us for the payments, and we will see that you get them promptly as per the original contract."

The letter was dated May 5, 1920, and written on a letter head of said company, upon which appeared the names "T. W. Halliday, S. E. Halliday, H. L. Halliday," and also on a corner the following: "Mills Louisiana, Texas, Arkansas," and under the firm name the word "Lumber," and under that the words "Hardwood a Speciality." That Crews did not answer the letter, but in a conversation with T. W. Halliday agreed to give the extension asked for, and agreed that the lumber company was acceptable to him as assignee of the timber contract with Ford. That the contract referred to in the letter was the original contract entered into by Crews with Ford, referred to above. (8) That the T. W. Halliday Lumber Company released Phillips from his undertaking under the contract, after it had taken charge of the mill, and thereafter handled all the lumber, and that it agreed to pay the remainder of the notes held by Crews, which constituted a lien upon the timber, and that it did pay some of the notes and interest on others, the principal of which had been paid by Ford. (9) That "construing the original contract, the notes given by Ford to Crews, the transfer of Ford to Halliday, and the letter of the Halliday Lumber Company to Crews," it appeared "that the Halliday Lumber Company agreed in writing to pay said notes in Tyler, which is in Smith county, Tex. (10) That the Halliday Lumber Company continued in possession of the mill property and timber, cutting the timber until about the time the suit was filed. (11) That 14 of the notes were unpaid when the suit was commenced. That several of them were then past due, and that Crews elected to declare them all due under the terms of the contract.

Young & Stinchcomb, of Longview, for appellants.

Simpson, Lasseter & Gentry, of Tyler, for appellees.

WILLSON, C. J. (after stating the facts as above). [1] In propositions under their assignment that the court erred in overruling their plea of privilege, appellants insist that the suit was not triable in Smith county unless it plainly appeared, and they say it did not, that they had contracted in writing to pay the notes sued upon there. The conclusion of the trial court that they had contracted to pay the notes in Smith county was based on the fact that the notes by their terms were payable there, the fact that Ford conveyed his rights under the contract with Crews to T. W. Halliday, and agreed that T. W. Halliday might "assume and carry out the contract" with Crews, after T. W. Halliday, S. E. Halliday, and H. L. Halliday formed the partnership, and the fact that the partnership afterwards by the letter of May 5, 1920, advised Crews that he might look to them for payment of Ford's indebtedness to him "promptly as per the original contract." The findings of fact on which the conclusion was based are not challenged in any way in any of the assignments in appellants' brief. The conclusion of the trial court was not error, unless it

should be said that his inference that the lumber company's undertaking to pay indebtedness Ford owed Crews was the indebtedness evidenced by the notes was unwarranted. McCauley v. Cross, 111 S. W. 790, and authorities there cited. Such an inference clearly was warranted, we think, from the fact that it did not appear that Ford owed Crews any other indebtedness than that evidenced by the notes, and the fact that the lumber company, as found by the court, after writing the letter paid some of the notes and paid interest which had accrued on the principal of others of them which Ford had paid.

[2] It appears from a bill of exceptions in the record that when the cause was called for trial appellants' attorneys announced to the court that they wished to appear only for the purpose of trying the issue presented by their plea of privilege and Crews' controverting plea, and desired that issue to be "finally determined by the court of last resort before they were ready to try the case on its merits." It further appears from said bill that appellants "entered an objection to proceeding to trial on the merits, but the court overruled said objection and held that the defendants were not entitled to have the issue of venue finally determined before answering to the merits of the case, and forced the defendants into trial, to which action of the court the defendants then and there excepted."

The bill of exceptions was approved by the trial judge with a qualification as follows:

"The pleadings clearly showed that a trial upon the plea of privilege involved a full trial upon the facts as to the merits of the case. I therefore ruled that I would hear the testimony on the plea of privilege and upon the merits together, and that after hearing testimony would render judgment, first, upon the plea of privilege, and, after judgment upon that issue, if proper to do so, would render judgment upon the merits, and directed the trial to proceed. After hearing the evidence, I was of the opinion that the plea of privilege should be overruled, and so ordered, and also rendered judgment upon the merits. There was no objection by defendants to proceeding to trial to the effect that they were not ready upon the facts for want of testimony to meet the issues presented."

We do not think the action of the trial court was erroneous on the facts stated by him, and, if it was, it does not appear the error operated to appellants' prejudice. Appellee, as correctly determined by the court, had a right to have the cause tried in Smith county, and, so far as anything in the record shows to the contrary, appellants were not injured by the action of the court in trying it when he did. The only point decided by this court in the case (Hill v. Brady, 231 S. W. 145), cited by appellants as supporting

their contention, was that a party having a right to appeal from a judgment overruling his plea of privilege, and who fails to do so, should be held to have waived the right to have the action of the trial court in overruling his plea reviewed on an appeal from a judgment on the merits of the case.

[3] The contention in appellants' brief that the evidence showed that Crews "was dealing with T. W. Halliday personally," and that the latter "was not authorized to bind H. L. Halliday in any manner," seems to be based mainly on testimony of T. W. Halliday that Ford was indebted to him, and transferred the mill property to him to secure the indebtedness, testimony of Ford that the negotiations resulting in his transfer of said property to T. W. Halliday were between him and T. W. Halliday alone, and that H. L. Halliday had nothing to do with same, testimony of Crews that his negotiations were with Ford and T. W. Halliday, and not with H. L. Halliday personally, and testimony of H. L. Halliday that he did not authorize T. W. Halliday to act in the matter for the Halliday Lumber Company. Perhaps if the testimony referred to was all the trial court had a right to look to, the contention should be sustained. But it appears in the record that there was other testimony, part of which is referred to below, proper for the court to consider in connection with that issue, and we think it was sufficient as a predicate for his finding. It appeared without contradiction in the testimony that the "T. W. Halliday Lumber Company" was a copartnership composed of T. W. Halliday, H. L. Halliday, and S. E. Halliday. H. L. Halliday testified that the partnership "was organized for purpose of buying and selling timber," and that he "left T. W. Halliday to transact all of the business for the T. W. Halliday Lumber Company." By the terms of the transfer from Ford to T. W. Halliday the right of the latter to assume the contract of the former with Crews and to use the timber as provided in that contract depended on Crews agreeing he might do so. It appears from Crews' testimony that after he verbally so agreed with T. W. Halliday he received the letter of May 5, 1920, written on the letter head of the lumber company and signed in its name, in which further time was asked in which to make payments stipulated for in the contract between Ford and Crews, and in which Crews was assured he could "look to us for the payments, and we will see that you get them promptly as per the original contract." Crews further testified he granted the extension asked for by the lumber company. Ford testified that the lumber company "cut the timber" he purchased of Crews; and it appeared from other testimony that a part, at least, if not all the lumber manufactured from the timber was shipped and sold in the lumber company's name.

[4] The remaining contention presented by assignments in appellants' brief is that the court erred when he permitted Crews, over their objection, to dismiss his suit so far as it was against Ford, on the ground, it appears from a recital in the judgment, that he had not been cited to answer the suit and was a bankrupt. In support of the contention it is insisted that the transfer by Ford to T. W. Halliday operated as a mortgage merely. It is argued that Ford "still has an equity in the timber involved," and therefore was a necessary party to the foreclosure awarded Crews. "The point is," appellants say in their brief, "that Ford has not been divested of his equity, and that the purchaser under the order of sale would not acquire Ford's interest, and therefore the other defendants are prejudiced because the foreclosed property could not bring its full value." The contention is overruled. The foreclosure was not against Ford's interest in the timber, but against the interest alone of appellants therein. The fact that their interest will not sell for as much as their and Ford's interest combined would sell for is not a matter appellants have a right to complain of. They were not seeking relief of any kind against Ford in their pleadings, and therefore were not concerned in this suit about any interest owned by him in the timber.

We think there is no error in the judgment. Therefore it is affirmed.