McKEAN & McNEAL v. MARTIN (two cases). (Nos. 2514, 2516.)*

(Court of Civil Appeals of Texas. Texarkana. April 6, 1922. Rehearing Denied May 4, 1922.)

1. Pleading ⚫111—In suit outside county of defendant's residence, burden is on plaintiff to prove contract enforceable outside of county was in writing.

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 1830, subd. 5, providing that one may be sued outside the county of his residence on a contract in writing to be performed outside the county, in an action by a buyer of cotton seed against sellers for damages for furnishing seed of inferior quality, after the seller had filed a plea of privilege to be sued in the county of his residence to entitle the buyer to sue in the county in which the contract was alleged to have been performed, the burden was on the buyer to prove that the obligation sought to be enforced was evidenced by a contract in writing.

2. Venue ⚫9—Bill of lading and draft attached held to constitute contract of sale.

As respects venue, where an agreement was made for the sale of cotton seed on the seed's being shipped by a seller in a car consigned to the "seller, notify buyer," a bill of lading issued by the railroad company with draft on the buyer attached constituted a contract of sale.

3. Venue ⚫7—Possession held not to pass until after goods reached their destination and were inspected.

As respects venue, where cotton seed was sold and shipped "consigned to seller, notify buyer," where the bill of lading accompanied by draft on the buyer stated that the carrier was to allow inspection, the possession of the seed was to pass to the buyer after reaching its destination and after being inspected.

4. Venue ⚫7—Venue of suit for breach of contract of sale held to be where contract was to be performed.

Where cotton seed was sold and consigned "to seller, notify buyer," and a bill of lading specified that the seed was to be fit for planting, the venue of a suit against the seller for furnishing defective seed was in the county in which the seed was to be delivered.

On Appellants' Motion for Rehearing.

5. Appeal and error ⚫449—Trial on merits during pendency of appeal from order overruling plea of privilege held error.

Under Rev. St. art. 1903, as amended April 2, 1917 (Laws 1917, c. 176, § 1 [Vernon's Ann. Civ. St. Supp. 1918, art. 1903]), providing that

if the judgment on a plea of privilege sustains a plea, an appeal taken therefrom shall suspend the transfer of the venue and a trial of the cause pending the final determination of such appeal, on overruling a special plea of privilege to be sued in the county of defendants' residence and on an appeal being taken therefrom, proceeding to trial on the merits was error.

Appeal from District Court, Franklin County; R. T. Wilkinson, Judge.

Action by W. R. Martin against McKean & McNeal. From an order overruling defendants' plea of privilege to be sued in the county of their residence, and from a judgment in the trial on the merits for plaintiff, and overruling a motion to set the judgment aside, defendants appeal. Affirmed in part, and reversed and remanded in part.

Appellee, who resided in Franklin county, purchased a carload, 1,000 bushels, of cotton seed of appellants, who were partners and who resided in Caldwell county. In his petition appellee alleged that on October 31, 1919, appellants' agent, one Baker, offered to sell him the seed, and that he on that day accepted the offer "and in writing agreed to purchase said 1,000 bushels of cotton seed from the defendants, at $2.50 per bushel, to be shipped January 1, 1920, to the plaintiff at Mt. Vernon, Texas": that appellants "agreed, promised, obligated and bound themselves in writing to deliver to the plaintiff the said 1,000 bushels of cotton seed in Mt. Vernon, Franklin county, Tex., for the consideration to be paid to them upon such delivery by plaintiff of $2.50 per bushel, shipment to be made on January 1, 1920"; that it was expressly understood between him and appellants and Baker that the seed "were to be used exclusively for planting purposes," and that Baker represented that the "seed were sound and machine culled, and would be pure Lone Star Cotton Seed and proper for planting"; that the seed were shipped by appellants and reached Mt. Vernon February 3, 1920, in a car "consigned to the defendants, notify plaintiff," and that a bill of lading issued therefor by the railroad company, with a draft on him by appellants for the purchase price of the seed, was sent by appellants to a bank in Mt. Vernon; and that to obtain possession of the seed he had to pay, and did pay, the draft. Appellee further alleged that the seed were in sacks, and that appellants had plainly marked on each of the sacks "86 per cent. germination," which meant that "when planted 86 seed out of each 100 would come up, that is, sprout and grow"; and that he saw the tags before he paid the draft, and believed the seed "were sound, were pure Lone Star planting seed and 86 per cent. germination and machine culled." Appellee then alleged that—

The "seed were worthless for planting purposes, in that they were not 86 per cent. germination; in fact, said seed were wholly unfit for planting purposes as the per cent. germination was so small as to be wholly unfit to plant, and so few came up that the entire planting had to be done over and that said seed were a total loss and worthless."

The prayer was for judgment for the value of sound seed of the kind appellee alleged appellants agreed to deliver to him.

February 15, 1921, appellants filed a "plea of privilege," which conformed to the requirements of article 1903, Revised Statutes, as amended April 2, 1917 (Laws 1917, c. 176, § 1 [Vernon's Ann. Civ. St. Supp. 1918, art. 1903]; Murphy v. Daliney [Tex. Civ. App.] 208 S. W. 981, 984), and asked that the cause be transferred to the district court of Caldwell county for trial.

February 17, 1921, appellee filed a plea controverting appellants' plea of privilege. In the controverting plea appellee alleged that—

His suit was one "for breach of contract, as fully shown in plaintiff's petition filed herein and here referred to and made a part hereof, by the terms of said contract, in writing, defendants agreed and obligated themselves to sell and deliver to the plaintiff in Franklin county, Texas, 1000 bushels of cotton seed at the price of $2.50 per bushel, to be shipped January 1, 1920, which seed were to be used for planting seed and were represented by the defendants and guaranteed by them as 86 per cent. germination, by which it was meant that 86 seed out of every 100 would sprout and grow when planted. That said cotton seed were worthless for planting seed, and were a total loss to plaintiff, wherefore he sued for the purchase price paid for said seed, to wit, $2,505, as shown in his said petition. Plaintiff alleges that said contract in writing provides that said seed were to be delivered in Mt. Vernon, Franklin county, Tex., which contract of sale was duly executed by the defendants, and also by their authority, and was by them duly accepted and ratified, wherefore plaintiff says that this court has jurisdiction and venue over the defendants, and each of them, notwithstanding they do not reside in Franklin county, Tex., by virtue and reason of the fifth section of article 1830 of the Revised Civil Statutes of Texas."

The cause was continued at the February term of the court, the order reciting that the parties had agreed the continuance was to be—

"without prejudice to the plea of privilege or controverting plea, and it is further agreed by and between said parties through their attorneys of record that said cause will be tried both upon its merits, at the next term of said district court, together with the plea of privilege and controverting plea."

At the hearing of the plea of privilege at the September term, 1921, appellee as a witness testified as follows:

"I purchased some cotton seed from the defendants to be delivered here at Mt. Vernon, in Franklin county, Tex. We had a written contract. Those cotton seed were shipped with bill of lading attached. The draft came to the First National Bank of Mt. Vernon, I had to pay off the draft to get the bill of lading. I had to deliver the bill of lading to the railroad company to get the cotton seed. I paid that draft off here in Franklin county, and the seed were delivered to me in this county."

The draft the witness referred to was as follows:

"Luling, Texas, 1, 24, 1920. Pay to the order of Lipscomb Bank & Trust Company $2,505.00, twenty-five hundred and five and no/100 dollars. B/L attached for —— bushels cotton seed. McKean & McNeal, per W. W. McNeal, to W. R. Martin, Mt. Vernon, Texas."

And it was indorsed as follows:

"Pay to the order of any bank or trust Co. Lipscomb Bank & Trust Co., Luling, Texas. W. R. Martin, O. K."

The bill of lading, so far as material, was as follows:

"The Galveston, Harrisburg & San Antonio Railway Company, received at Luling, Texas, 1, 23, 1920, from McKean & McNeal, the property described below, marked consigned and destined as indicated below, which said company agrees to carry to its usual place of delivery at said destination. It is mutually agreed that the surrender of this original order bill of lading properly indorsed shall be required before delivery of the property. Consigned to order of shippers. Destination, Mt. Vernon, state of Texas. Notify W. R. Martin at Mt. Vernon, state of Texas. Description of articles and special marks, three hr sacks cotton seed for planting. Allow inspection. Sent charges collect. McKean & McNeal, Shippers, per W. W. McNeal. J. S. Cervex, Agent."

Indorsements on the back: "McKean & McNeal."

On the testimony stated the court, by an order made September 3, 1921, overruled the plea of privilege, whereupon appellants gave notice of and in due time perfected an appeal to this court from the order.

The court afterwards, to wit, on September 9, 1921, in the absence of appellants and their attorneys, tried the case on its merits, and rendered judgment in appellee's favor against appellants for $2,592.52. A motion filed by appellants to set aside the judgment having been overruled, they gave notice of and prosecuted an appeal therefrom to this court.

Dial, Melson, Davidson & Brim, of Sulphur Springs, and E. B. Coopwood, of Lockhart, for appellants.

J. M. Burford, of Mt. Pleasant, and F. B. Caudle, of Mt. Vernon, for appellee.

WILLSON, C. J. (after stating the facts as above). [1] To entitle him to maintain his suit in Franklin county, the burden was on appellee to prove that the obligation he sought to enforce against appellants was evidenced by a contract in writing. Revised Statutes, art. 1903, as amended April 2, 1917; Vernon's St. art. 1830, subd. 5.

It will be noted that, while appellee alleged in his petition (the averments of which he made a part of his plea controverting the plea of privilege) that when he agreed to purchase the seed October 31, 1919, appellants' agent, Baker, represented that they were sound and proper for planting, and further alleged that it was understood between him and Baker and appellants that the seed were to be used exclusively for planting purposes, he did not adduce any testimony to support the allegations. His own testimony as a witness that he purchased the cotton seed from appellants to be delivered to him in Franklin county was all the testimony there was as to the terms of that contract. As appellee's suit was not for breach of an undertaking by appellants to deliver the seed in Franklin county, but was, instead, for breach of an alleged undertaking in writing on their part to deliver seed fit for planting to appellee in that county, it is plain the action of the trial court in overruling the plea of privilege cannot be sustained on the testimony referred to; for that testimony at most only proved that appellants had undertaken in writing to deliver the seed to appellee in Franklin county, and not that the seed they delivered would be fit for planting.

It is assumed, therefore, that the theory on which the trial court overruled the plea of privilege was that the bill of lading and draft referred to in the statement above was sufficient to show that appellants contracted in writing to deliver seed fit for planting to appellee in Franklin county.

[2] As the writer sees it, the real contract between the parties was the one made in October, before the seed were shipped the following January; and, if he did not regard it as settled that the draft and bill of lading should be treated as the contract (Seley v. Williams, 20 Tex. Civ. App. 405, 50 S. W. 399; Callander v. Short, 34 Tex. Civ. App. 364, 78 S. W. 366; Keller v. Mangum [Tex. Civ. App.] 161 S. W. 19; Landa v. Ainsa [Tex. Civ. App.] 231 S. W. 175; Gottlieb v. Dismukes [Tex. Civ. App.] 230 S. W. 792; Pittman v. Sanders [Tex. Civ. App.] 234 S. W. 412), he would be inclined to think the right of appellee to maintain the suit in Franklin county should be determined with reference alone to the terms of the October contract.

[3, 4] Treating the draft and bill of lading as the contract, the question is, Did appellants thereby undertake to deliver cotton seed fit for planting to appellee in Franklin county? Plainly the draft did not evidence such an undertaking. Unless, therefore, the bill of lading was sufficient to show

that appellants so agreed, the question should be answered in the negative, and appellants' contention that the trial court erred when he overruled the plea of privilege should be sustained.

It appeared from the bill of lading that the seed were consigned to appellants at Mt. Vernon, "notify" appellee. That meant that when the seed reached Mt. Vernon the carrier was to notify appellee that it held same subject to appellants' order, and that the seed would be delivered to him on the presentation to it of such an order; that is, the bill of lading indorsed by appellants. It further appeared from the bill of lading that the shipment of cotton seed it covered was "for planting." That, of course, meant the seed were sound and fit for planting. Oil Co. v. Trammell (Tex. Civ. App.) 72 S. W. 244; 2 Mechem on Sales, § 1234 et seq; 24 R. C. L. 168; 35 Cyc. 381 et seq. It further appeared from the bill that the carrier was to "allow inspection," which meant that on the presentation to it of the bill of lading the carrier was to allow the holder thereof to inspect the seed to determine whether he would accept a delivery thereof or not. So it appears from the contract that appellants, through the carrier, had possession and control of the seed after same reached Mt. Vernon (Robinson v. H. & T. C. Ry. Co., 105 Tex. 185, 146 S. W. 537), and that appellee was to be allowed to inspect them before they were delivered to him. It is plain, therefore, that by the terms of the contract possession of the seed was not to pass to appellee before they reached Mt. Vernon, and that delivery of same to him was to be made there. It is also plain that the seed so delivered to appellee were to be fit for planting.

As we understand the record it is not pretended that the seed were not delivered as agreed upon. The contention is that the contract was breached in that the seed delivered were not fit for planting. We do not agree with appellants that the suit could not be maintained against them in Franklin county on that ground. If the bill of lading and draft constituted a contract between them and appellee, as we feel bound to say it did in the light of the authorities cited above, and if their undertaking thereunder was to deliver to appellee in Mt. Vernon cotton seed fit for planting, as we have determined it was, we see no reason why suit could not be maintained against them in Franklin county for delivering seed which were not fit for planting. If they were suable in Franklin county at all, they were suable for any breach of the contract evidenced by the bill of lading and draft. Failure to deliver seed fit for planting was no less a breach of the contract than would have been their failure to deliver seed at all.

We have examined the authorities cited by appellants as supporting their contention,

and think none of them are like this one on their facts. In Seed Co. v. Blumberg (Tex. Civ. App.) 162 S. W. 1, the undertaking of Blumberg, who resided in Gaudalupe county and was sued in Bexar county, was to deliver corn on board cars in Seguin for shipment to El Paso. In Gottlieb v. Ainsworth (Tex. Civ. App.) 229 S. W. 341, it did not appear that the bill of lading, to which the seller attached a draft was an "order" bill of lading, as here, and it appeared from other testimony that the undertaking of the seller was only to deliver the corn on board cars in Kernes county, where he resided, for transportation to Williamson county, where he was sued and where the buyer resided. In Lee v. Oil Co. (Tex. Civ. App.) 215 S. W. 977, it appeared that the oil company bought cotton seed of Lee and agreed to pay him therefor "$69 per ton f. o. b. cars Jewett." Jewett was in Leon county, where Lee resided. The suit against him was in Lampasas county. The court held that he did all he agreed to do under the contract when he loaded the seed on cars at Jewett. In Valdespino v. Dorrance (Tex. Civ. App.) 207 S. W. 649, the bills of lading were the only evidence of a contract in writing between the parties. They "only called for so many bales of cotton, and contained no statement as to the weight or class of the cotton." The suit was by the buyer in Harris county, where he resided, against the seller, who resided in El Paso county. It was to recover a sum which the buyer claimed he had paid the seller in excess of the sum he was bound to pay for the cotton, and which the seller was bound to return to him by the terms of an oral contract between them. The bills of lading being silent as to any undertaking on the part of the seller to pay to the buyer in Harris county any sum paid by the latter in excess of the sum due the seller, the court held the suit to be predicated on the oral agreement, and therefore that it could not be maintained against the seller in Harris county.

The only contention presented by the assignments on the appeal from the judgment on the merits of the case is that, appellants having given notice of an appeal from the order overruling their plea of privilege, the trial court was without power to try the case on its merits until the appeal from that order had been determined. The contention is predicated on the provision in article 1903, Revised Statutes, as amended April 2, 1917, that "either party may appeal from the judgment sustaining or overruling the plea of privilege, and if the judgment is one sustaining the plea of privilege and an appeal is taken, such appeal shall suspend the transfer of the venue and a trial of the cause pending the final determination of such appeal," and on the statement of this court in Hill v. Brady (Tex. Civ. App.) 231 S. W. 145,

241 S.W.—50

that the purpose of the Legislature in enacting the statute "was to have the question of venue finally determined before the cause was tried on its merits, and so avoid useless expense to the parties, as well as waste of their time and the court's, which often resulted under the practice prevailing when the statute was enacted of trying a cause on its merits before the question as to venue was settled; for under that practice, if it was determined on appeal of the cause that the question as to venue had been wrongly decided by the trial court, a reversal of the judgment followed as a matter of course."

The point, and only point, decided in the Hill-Brady Case was that a party having a right to appeal, but who fails to do so, from an order overruling his plea of privilege, thereby waives the right he otherwise would have to have the appellate court review the action of the trial court in overruling the plea. That case, therefore, cannot be treated as authority for appellants' contention. The point they make was decided by this court contrary to their contention in Halliday v. Crews, 237 S. W. 600. There is no conflict between the two cases, and we see no reason for doubting the correctness of the decision in either of them.

The judgments are affirmed.

## On Appellants' Motion for Rehearing.

[5] We think the conclusion reached that the trial court did not err when he overruled the plea of privilege was in conformity to law established in this state by cases cited in the opinion, but have concluded after further consideration that said court did not have a right to try the case on its merits pending the appeal from the judgment overruling said plea. We were wrong in assuming that the question as to the court's right to try the case on the merits had been decided contrary to appellants' contention in Halliday v. Crews (Tex. Civ. App.) 237 S. W. 600. The judgment against the defendants in that case on the merits was not by default, as here, but was rendered after a trial in which the defendants participated. This court has to-day held in an opinion by Judge Hodges that the effect of an appeal from an order overruling a plea of privilege prosecuted as provided by law is to suspend the power of the court to proceed further in the trial of the case until the issue as to venue has been finally determined, and to render void a judgment by default on the merits of the case taken by the plaintiff after notice of the appeal was given and before the appeal was disposed of. Wallace v. Adams, 243 S. W. ——, yet to be reported. The Galveston Court of Civil Appeals made the same ruling, in effect, in Hill v. Wood, 238 S. W. 309. The reasons for construing that to be the effect of the statute (article 1903) are

stated in the opinion of Judge Hodges referred to, and need not be restated here.

The motion will be overruled in so far as it is to set aside the order of this court affirming the judgment of the court below overruling appellants' plea of privilege, but it will be granted in so far as it is to set aside the order of this court affirming the judgment of the court below on the merits of the case, and said judgment on the merits will be reversed, and the cause will be remanded for a new trial.